# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| Essex Insurance Company, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 06-0737-CV-W-FJG |
| Ragland Mills, Inc. et. al., | ) ) |
| Defendants. | ) |

# ORDER

Currently pending before the Court is plaintiff Essex Insurance Company's Motion for Summary Judgment (Doc. No. 15), Hardy Defendants' Motion for Summary Judgment (Doc. No. 48), Defendants' Carl Wiseman and ECI, Inc.'s Motion for Summary Judgment (Doc. No. 50), and Defendants' ECI and Wiseman's Motion to Amend Case Management Order (Doc. No. 39). Each motion will be considered below.

## I.  BACKGROUND

### A.  Factual History[1]

On November 7, 2005, while working as a firefighter for the Neosho Fire Department, Timothy Hardy ("Tim Hardy") responded to a call at defendant Ragland Mills, Inc. ("Ragland Mills"). When Tim Hardy arrived at the scene, there was a smoldering fire in the area referred to as the "west silo" at Ragland Mills. In order to gain an overhead view

---

[1] In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996). Accordingly, all facts set forth in the Court's statement of facts will be taken from plaintiff's motion for summary judgment (Doc. No. 15) and its suggestions in support (Doc. No. 16) unless otherwise specified.

of the affected west silo area, Tim Hardy boarded a manlift to reach the unaffected area of the site, referred to as the "east silo". As Tim Hardy ascended the manlift, his firefighter gear became caught on a floor opening that the manlift passed through. This opening was the highest floor opening at about 100 feet from ground level. The manlift did not stop but rather continued upward causing Tim Hardy to be turned upside down and slowly suffocate. Tim Hardy died as a result of this accident.

It was later discovered that there were problems with the manlift's construction and safety. Before Tim Hardy's death, defendant Ragland Mills hired defendant Carl Wiseman ("Wiseman"), an employee of ECI, Inc. ("ECI"), to inspect the manlift in April of 2005. Ragland Mills hired Wiseman to determine if the manlift was safe for those who would be foreseeable users of the device, including workers and others who may need to access the top of the silo such as firefighters, first responders, and other emergency personnel. Tim Hardy's family later brought suit in state court alleging that defendants' failure to properly inspect and maintain the manlift caused Tim Hardy's death.

**B.    Procedural History**

On July 18, 2006, the wife of Tim Hardy, Melissa Hardy, and the father of Tim Hardy, Jerry Hardy (hereinafter "Hardys"), filed a wrongful death action in the Circuit Court of Newton County against defendants Ragland Mills, Carl Wiseman, and ECI, Inc. This action was later transferred to the Circuit Court of Greene County. The Hardys alleged that defendants were negligent in causing the death of Tim Hardy by among other things, failing to properly inspect the manlift, failing to maintain the manlift in a safe and workable condition, and failing to warn and instruct Tim Hardy as to appropriate use of the manlift.

On September 5, 2006, Essex Insurance Company ("Essex"), who insured defendants Wiseman and ECI, then instituted a federal declaratory judgment action in this

Court (Doc. No. 1). Essex brought this action against defendants Ragland Mills, Melissa Hardy, Jerry Hardy, Carl Wiseman, and ECI. The insurance policy between Essex and Wiseman and ECI requires Essex to provide a defense to Carl Wiseman and ECI for any suit for "bodily injury" caused by an "occurrence" that takes place in the "coverage territory." However, pursuant to the policy exclusions, Essex alleges that it is not required to defend or indemnify defendants Wiseman and ECI in the Hardy state court action. Therefore, Essex is seeking a declaratory judgment from this Court declaring the rights and legal obligations of the parties with respect to the insurance policy in order to determine whether Essex must defend and indemnify defendants Wiseman and ECI. On January 4, 2007, defendants ECI and Wiseman filed a Counterclaim against Essex for a declaratory judgment in their favor (Doc. No. 11).

Subsequently, on May 9, 2007, the claim against Wiseman and ECI was tried to the state court. The claim against Ragland Mills was not submitted to the state court because the Hardys settled out of court with Ragland Mills. After hearing the evidence, the Circuit Court entered judgment against defendants ECI and Wiseman in the amount of $7,200,000.00 in damages. The Court awarded 4.25 million dollars in compensatory damages against ECI and Wiseman. The Court did not award punitive, exemplary, or any damages involving aggravating factors. In the federal action before this Court, all parties have now moved for summary judgment seeking a declaration from the Court on whether Essex must defend and indemnify ECI and Wiseman under the policy. The details of the policy will be discussed in the next section.

  **C.**  **The Commercial General Liability Policy**

ECI purchased Commercial General Liability ("CGL") coverage from plaintiff Essex, Policy #3CR9808. The policy provides coverage for the period September 12, 2005 to

3

September 12, 2006. Tim Hardy's death occurred on November 7, 2005, so there is no dispute that the accident occurred within the coverage period. The policy of insurance endorsement states that it provides coverage for those operations described in the business description and/or classification on the declarations page of the policy. The declarations page of the policy issued to ECI identified the business covered in the "Business Description" section under the policy as "Elevator Inspector." In addition, the Supplemental Declarations page identifies the description of the hazards for which insurance is being provided as "Elevator/Escalator Inspection." The premium for the policy was based upon insuring ECI for elevator inspection, installation, service and repair and was calculated upon the gross receipts for ECI's elevator inspection services. ECI paid an advanced premium of $1,300.00.

The policy provides coverage for bodily injury or property damage caused by an occurrence in the coverage territory. The Combination Contractors Endorsement, M/E-043, defines what constitutes an occurrence under the policy. "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, the following is not an "occurrence" under the policy:

    a.    Actual and/or alleged defective work; and/or
    b.    Actual and/or alleged defective workmanship; and/or
    c.    Actual and/or alleged defective construction; and/or
    d.    Actual and/or alleged negligent construction.

Further, the policy provides that it "consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage." The policy also states "[w]here there is no coverage under this policy, there is no duty to defend."

Additionally, the policy contains certain exclusions where coverage is not provided. For example, Combination General Endorsement, M/E-001 (01/05), provides that

4

professional liability, errors, omission, negligent acts, malpractice and/or acts of any type including rendering or failure to render any type of professional service is not covered under the policy, unless such coverage is specifically endorsed onto the policy." Also, Form M/E-13-1 (4/99) includes a products/completed operations hazard exclusion, which states the following:

> The coverage under this policy does not apply to "bodily injury" or "property damage" arising out of "your products manufactured, sold, handled or distributed:
> On, form or in connection with the use of any premises described in the Schedule, or
> 2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf.

"Products-completed operations hazard" is defined as "all bodily injury and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occur after you have relinquished possession of those products." No premium was charged on the policy for products/completed operations hazard. The policy also includes a declaration which provides that "Products/Completed Operations Aggregate Limit" is "EXCLUDED."

The parties now seek the Court's determination of whether the exclusions contained within the policy apply to ECI and Wiseman's claims arising out of the Hardys' lawsuit.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita,

475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

### III. DISCUSSION

Because jurisdiction in this case is based on diversity of citizenship, the Court applies the substantive law of the forum state in which it sits. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 68 S. Ct. 817, 82 L. Ed. 1188 (1938). If the Missouri Supreme Court has not yet addressed a particular issue, the Court "may consider relevant state precedent, analogous decisions, considered dicta,...and any other reliable data." Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998)(citations and quotations omitted).

6

"Decisions from Missouri's intermediate appellate court (the Missouri Court of Appeals) are 'particularly relevant,' and must be followed when they are best evidence of Missouri law." Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005)(cited case omitted).

Under Missouri law, "the interpretation of the meaning of an insurance policy is a question of law." Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 549 (8th Cir. 2003)(quoting Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). "Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. If the language is ambiguous, it will be construed against the insurer. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993) (en banc)(internal citations omitted).

In reviewing insurance policies, the purpose is to give "a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v. Life Insurance Investors Ins. Co. of America, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984). An interpretation of insurance policy language which may render a portion of the policy illusory "should not be indulged in." Cano v. Travelers Ins. Co., 656 S.W.2d 266, 271 (Mo. 1983) (en banc). If an insurance "contract promises something at one point and takes it away at another there is an ambiguity." Behr v. Blue Cross Hosp. Service, Inc., of Mo., 715 S.W.2d 251, 256 (Mo. 1986)(en banc).

Further, "[e]xceptions and limitations contained in insurance polies should be construed strictly against the insurer." Standard Artificial Limb, 895 S.W.2d at 209. "When

7

an insurance company seeks to escape coverage based on policy exclusions, the burden is on it to establish the applicability of the exclusions." Superior Equip. Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 482 (Mo. Ct. App. 1998). "Unless an insurance contract is so clear in its meaning that as a matter of law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied." Northland Ins. Cos. v. Russo, 929 S.W.2d 930, 934 (Mo. Ct. App. 1996).

In this case, Essex insured defendants ECI and Wiseman under a liability policy bearing the Policy number 3CR9808, which was effective from September 12, 2005 to September 12, 2006. The policy states that it covers bodily injury or property damage. The policy states in relevant part:

> a. Will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
> b. This insurance applies to "bodily injury" and "property damage" only if:
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory
> > (2) The "bodily injury" or "property damage" occurs during the policy period

Tim Hardy died on November 7, 2005 in Missouri, so there is no dispute that the policy was in effect at the time of his death and that his death occurred within the coverage territory.

Essex argues that it has no duty to defend ECI and Wiseman because of the following exclusions under the policy: (1) the insurance policy excludes loss for any injuries arising out of defective work and/or defective workmanship; (2) the insurance policy excludes loss for any injuries arising out of "products/completed operations hazard; (3) the

8

insurance policy excludes loss for any injuries arising out of professional negligence; and (4) the insurance policy excludes claims for punitive damages.[2] Defendants' central arguments are that (1) the purpose of the policy between Essex and ECI/Wiseman was to provide coverage for elevator inspection services and Essex now seeks to deny coverage for the very hazard for which it insured ECI and Wiseman; (2) the exclusions do not apply to injuries that result to a third party; (3) elevator inspection services are not a professional service; and (4) elevator inspection services do not fall within the definition of the "products" exclusion under the policy.

### A. Exclusion for Loss Arising out of Defective Work and/or Defective Workmanship

Essex first argues that Tim Hardy's accident is not an "occurrence" as defined by the policy because Tim Hardy's accident was the result of defective workmanship. Because the allegations against ECI/Wiseman are that Tim Hardy's death was caused by Wiseman's defective work or workmanship, Essex contends there is no coverage under the policy for these claims. Essex notes that all or most of Hardys' allegations against ECI and Wiseman are based on alleged defective work and/or workmanship. Under the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, the following is not an "occurrence" under this policy:

    a. actual and/or alleged defective work; and/or
    b. actual and/or alleged defective workmanship; and/or

---

[2]Essex originally made this argument in its motion for summary judgment (Doc. No. 15). However, Essex conceded in its response to the Hardys' motion for summary judgment (Doc. No. 52) that the state court judgment did not include punitive damages. Thus, the court will not address this argument as all parties now agree that the state court judgment did not include punitive damages. Further, upon review of the state court judgment, the Court concurs that the award did not include punitive damages.

9

  c. actual and/or alleged defective construction; and/or
  d. actual and/or alleged negligent construction

  The Hardys first respond that Wiseman did not perform any actual work on the elevator. Rather, Wiseman only inspected the elevator seven months prior to the accident. Second, the Hardys argue that elevator inspection services which injure a third party do not fall within the defective work or workmanship exclusion in the CGL policy. The Hardys contend that even if the work/workmanship exclusion in a CGL policy were applicable to elevator inspection services, under Missouri law, the exclusion only applies to damage to the work or workmanship itself and not when it causes injury to a third party. The Hardys refer the Court to American Family Mutual Ins. Co. v. Ragsdale Concrete Finishing Inc., 725 S.W.2d 623 (Mo. App. 1987), where the court held that while contractual liability for failing to do the job in a workmanlike manner is excluded, if that failure leads to personal injury to a third party, there is coverage. In Ragsdale, the insured had an insurance policy for its concrete finishing business. Id. at 624. During the coverage period, a claim was made regarding an in ground pool. Id. The insurer denied coverage based upon an exclusion for the work of the insured. Id. The court noted that the work exclusion had not been interpreted in Missouri, but that all of the jurisdictions which had considered the work exclusion held it "does not cover faulty workmanship but rather provides coverage for accidents arising out of faulty workmanship." Id. Thus, the Hardys assert that an exclusion in a CGL policy for your work or your workmanship is intended to exclude coverage for the faulty workmanship itself, but not to the injuries that result to third parties as a result of the faulty workmanship. ECI and Wiseman responded with similar arguments.

  The Court finds that the defective work/workmanship exclusion does not apply to the

10
Case 4:06-cv-00737-FJG   Document 76   Filed 02/06/08   Page 10 of 18

CGL policy at issue in this case. The Court agrees with defendants that coverage does not exist for the defective work itself, but coverage does exist for injuries to a third party caused by the defective work. The Court is persuaded by the court's decision in Ragsdale where it held that coverage for accidents arising out of faulty workmanship for injuries to a third party exist under a CGL policy. In addition, as defendants have correctly pointed out, other jurisdictions have followed the same rule. See Pekin Ins. Co. v. Richard Marker Assoc., Inc., 682 N.E.2d 362 (Ill. App. 1997)(stating that while contractual losses for damage to work itself are not covered, tort injury to a third person is covered under the CGL policy); Auto Owners Ins. Co. v. Home Pride Co., Inc., 684 N.W.2d 571, 577-78 (Neb. 2004); Auto Owners Ins. Co. v. Tripp Construction, Inc., 737 So.2d 600, 601 (Fla. App. 1999)(work/workmanship exclusion excludes repair or replacement of defective work itself, and not coverage "against personal injury or damages to personal property which might result from the defective workmanship"); Weedo v. Stone E Brick, Inc., 405 A.2d 788, 791-92 (N.J. 1979)(negligent workmanship is not covered in regard to work itself, but is covered as to any injury to a third person which defective work causes); J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 102-103 (2nd Cir. 1993)(stating that the work exclusion under the CGL policy excludes contractual liability claims for economic loss, but it does not exclude bodily injury caused by the defective work); Hamilton Die Cast, Inc. v. U.S. Fidelity & Guaranty Co., 508 F.2d 417, 420 (7th Cir. 1975) (noting that damage or defect in the work itself was not covered, but that if the defective work injured a third person, the injury claim would be covered); R.N. Thompson & Assoc., Inc. v. Monroe Guaranty Ins. Co., 686 N.E.2d 160, 162-63 (Ind. App. 1997)(noting that the great weight of authority hold that a CGL policy covers injury to a third party caused by defective work or workmanship, but does not cover the work itself). The reason for this rule is that the completed work is not what the injured

person bargained for. See e.g., Weedo, 405 A.2d at 291; Bor-Son Bldg. Corp. v. Employers Commercial Union Ins. Co., 323 N.W.2d 58, 63 (Minn. 1982); Vernon Williams and Son Constr., Inc. v. Continental Ins. Co., 591 S.W.2d 760, 763 (Tenn. 1979). Thus, Essex cannot evade its duty to defend or indemnify ECI and Wiseman under the defective work/workmanship exclusion.

> **B. Exclusion for Loss for any Injuries Arising Out of "Products/Completed Operations Hazard"**

A products/completed operations hazard exclusion excludes liability for bodily injury or property damage arising out of an accident which occurs after the insured has relinquished possession of the product and/or after the insured has completed work. 9A Couch on Ins. §129:23. Essex argues that the insurance policy excludes loss for any injuries arising out of the "products/completed operations hazard."[3] Products/Completed Operations Hazard Redefined, Form M/E-173-1(4/99), is listed in the declarations and provides the following: "The coverage under this policy does not apply to 'bodily

---

[3] Originally, Essex had stated that the policy included Endorsement 1, Form 011-109 (7-80) which provides:
> In consideration of no change in premium, it is agreed that form M/E-173-1 (04-99) is hereby deleted in its entirety. Form M/E-173 is hereby attached and forms a part of this policy.

Because of this above endorsement, Essex stated in its motion (Doc. No. 15) that the policy includes, Form M/E-173 (4/99), which is the products/completed operations hazard exclusion which states that "this insurance does not apply to 'bodily injury' or 'property damage' included within the 'products/completed operations hazard.'" However, when defendants pointed out that Form M/E-173 (4/99) was not included as one of the endorsements on the declarations page and thus is not a part of the policy, Essex conceded this point in its response to ECI and Wiseman's motion for summary judgment (Doc. No. 51). Thus, the parties now agree that Form M/E-173 (4/99) is not a part of the policy. However, Essex argues that Form M/E-173-1 (04-99) is a part of the policy and serves as an exclusion to ECI and Wiseman's claims. Defendants agree that this latter endorsement is included in the policy, but they disagree with Essex about its application in this case.

12
Case 4:06-cv-00737-FJG   Document 76   Filed 02/06/08   Page 12 of 18

injury,'...arising out of 'your products' manufactured, sold, handled or distributed. 2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf." The products/completed operations hazard includes all "'bodily injury'...that arises out of your 'your products' if the 'bodily injury'...occur[s] after you have relinquished possession of those products." Essex argues this endorsement excludes coverage for ECI and Wiseman's claim because the manlift handled by Wiseman is a product. Essex notes that Wiseman's inspection job included checking every bolt, nut, belt, safety device, and electrical switch on the manlift. Because Tim Hardy's death occurred seven months after Wiseman conducted and concluded his inspection of the manlift on Ragland Mills' property, Essex contends the products/completed operations exclusion excludes coverage for precisely this type of claim. Additionally, since the declarations page provided that an aggregate limit was excluded for products/completed operations hazard, Essex argues this is further support for the exclusion of ECI and Wiseman's claims.

Defendants respond that the products/completed operations hazard exclusion does not apply because Wiseman and ECI did not manufacture, sell, or distribute any "products." Instead, the sole business of ECI and Wiseman was the service of inspecting elevators. Defendants refer the Court to Rafiner Elevator Works, Inc. v. Michigan Mutual Liability Co., 392 S.W.2d 240 (Mo. 1965), where the Missouri Supreme Court addressed this very issue with facts identical to this case. In Rafiner, the insured had a commercial general liability policy for its business of repairing and servicing elevators. Id. at 241. The insured as part of this business performed bimonthly elevator inspections at a meat packing plant. Id. After an inspection, the elevator failed, injuring an employee of the meat packing company. Id. The employee sued Rafiner for its failure to inspect the elevator. Id. The insurer denied coverage based upon a products exclusion in the policy. Id. The Missouri Supreme

13

Court rejected the argument that the elevator inspection or maintenance fell within a products exclusion. Id. at 242. The Court held:

> It is difficult indeed to understand how 'products' could reasonably be defined to include operations consisting solely of work or services. The average person would consider 'products' to mean goods or tangible items usually manufactured, sold, or distributed. No business man would reasonably expect to find a service operation excluded from coverage by including it in a definition of 'products.'

Id. The Court also stated that to exclude coverage for elevator inspection services under a products exclusion in a CGL policy would be "misleading and deceptive." Id.

The Court finds that hazards resulting from elevator inspections do not fall within the definition of "products." Thus, the Court will apply the precedent set forth by the Missouri Supreme Court in Rafiner. Since the highest court in Missouri addressed this very issue, the Court finds no reason to substitute its own judgment. Essex argues, however, that Rafiner is distinguishable because the definition in the policy at issue is "products/completed operations hazard" and not merely "products hazard" as in Rafiner. The Court finds that this slight distinction is insignificant. First, Essex did not provide any law supporting the importance of this distinction. Second, the policy at issue in Rafiner defined products hazard as both goods or products manufactured and as "operations, if the accident occurs after such operations have been completed or abandoned and occurs away from the premises..." Thus, the products definition in Rafiner encompassed "operations hazard" just as the policy at issue in this case. Despite this definition, the Missouri Supreme Court held that the injury resulting from negligence of the elevator inspection was not excluded under the products definition in a CGL policy. Id. at 242. Further, any ambiguity in the policy about whether elevator inspections are considered a "product" must be construed against the insurer. See Peters, 853 S.W.2d at 302 (Mo.

1993). If this Court were to exclude coverage for elevator inspections, it would render the policy illusory.

In addition, the Court agrees with defendants that Essex sold ECI and Wiseman a commercial liability policy for elevator inspection services. Essex now seeks to deny coverage for an injury to a third party arising out of ECI and Wiseman's elevator inspection. Essex is essentially denying coverage for the very hazard which it insured ECI and Wiseman. Also, ECI and Wiseman paid a premium of $1300.00 for a CGL policy covering elevator inspections. This premium was calculated based upon the hazards and gross receipts of elevator inspection. The policy specifically identifies the hazard as "elevator/escalator inspection, installation, service and repair" and the declarations page lists the business description as "elevator inspector." Essex cannot escape its obligations to the insured under a policy for elevator inspection insurance when the claim involves an injury arising out of an elevator inspection. Therefore, the Court holds that the products/completed operations hazard endorsement does not exclude ECI and Wiseman's claims for coverage under the policy.

### C. Exclusion for Loss for any Injuries Arising out of Professional Negligence

Lastly, Essex argues that the policy excludes coverage for professional liability errors. Because the Hardys allege that Wiseman and ECI allegedly committed negligent acts in the course of their duties as a licensed inspector, Essex asserts that the professional liability exclusion applies. The combination general endorsement, Form ME-001, provides:

> Professional Liability, Errors, Omission, Negligent Acts, Malpractice and/or acts of any type including rendering or failure to render any type of professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy.

15

Essex cites to an Eastern District of Missouri case where the insurer brought a declaratory judgment action seeking that it had no duty to defend or indemnify its insured for a claim involving the collapse of a tower. National Union Fire Ins. Co. of Pittsburgh v. Structural Systems Technology, 756 F. Supp. 1232 (E.D. Mo. 1991). The applicable policy contained a professional services exclusion. The court held that the exclusion precluded coverage for the claims of damages from the insured's "design of the tower or supervisory, inspection, or engineering services." Id. at 1238. Essex states that ECI and Wiseman's specialized skills qualifies them as professionals.

The Hardys argue that the declarations page of the policy which states that the policy is providing coverage for ECI as a "elevator inspector" must be read together with the professional liability exclusion. The Hardys' interpretation is that coverage exists for ECI as an elevator inspector. Otherwise, the Hardys note that this exclusion would be excluding the exact business Essex insured–elevator inspection. Further, the Hardys point out that the policy does not define what constitutes professional services.

ECI and Wiseman respond that this exclusion does not apply because the elevator inspection performed by Wiseman does not fall within the definition of a professional service. ECI and Wiseman note that Missouri defines a profession as a "calling" and "service" as an act done for the benefit or command of another and is defined as requiring specialized knowledge and often long and intensive academic preparation. Mo. Rev. Stat. § 356.021. ECI and Wiseman state that the requirements to become an official inspector only require a five-day course. Further, ECI and Wiseman note that training for belt man lifts, which is how Tim Hardy was injured, was received through on the job training. Thus, defendants claim elevator inspectors do not fall within the definition of a professional.

Essex replies that while it is true that the policy covers elevator inspections, the

16
Case 4:06-cv-00737-FJG   Document 76   Filed 02/06/08   Page 16 of 18

coverage for those inspections is subject to provisions and exclusions in the policy.  Essex argues that the application of the professional liability exclusion is not rendered meaningless because the policy would presumably cover injuries to people or property on the ground, i.e., if Wiseman dropped a flashlight, tape measure or clipboard from above, striking a person below and causing bodily injury.  Essex also states that under defendants' definition of a "professional service", insurance brokers, software designers, and mental health counselors would not be considered professional services.  Essex asserts that elevator inspectors require specialized skill and training and are professionals.

The Court finds that the professional liability exclusion does not exclude coverage for ECI and Wiseman's claims under the policy.  The Court concludes that the service of elevator inspectors is not a professional service.  The policy at issue does not even define what is a professional or professional service.  Thus, the ambiguity in the policy about what constitutes a professional must be construed against the insurer.  Also, even if elevator inspections are considered a professional service under the exclusion, this exclusion does not apply "unless such coverage is specifically endorsed onto the policy."  However, the Court finds that coverage is specifically endorsed onto the policy for the hazard of elevator inspection. Thus, the professional liability exclusion does not apply.

Therefore, the Court holds that the professional liability exclusion does not exclude ECI and Wiseman's claims for coverage under the policy.  Because the Court finds that the three exclusions cited by Essex do not apply to this case, Essex is obligated to defend and indemnify ECI and Wiseman under the policy for the claims arising out of the Hardys' lawsuit.  Accordingly, Essex's motion for summary judgment is hereby **DENIED**, the Hardy's motion for summary judgment is **GRANTED**, and ECI and Wiseman's motion for summary judgment is **GRANTED**.

In light of the Court's decision in this matter, the Court will **PROVISIONALLY DENY** defendants' ECI and Wiseman's Motion to Amend the Case Management Order. Defendants ECI and Wiseman had requested a continuance of the trial date and an extension of the discovery deadlines to allow discovery of its counterclaims. If defendants still seek an extension of time to seek discovery of its counterclaims, defendants should properly renew their motion with the Court and appropriately state the reasons for the extension.

**IV. CONCLUSION**

For the foregoing reasons, plaintiff Essex Insurance Company's Motion for Summary Judgment (Doc. No. 15) is **DENIED**, Hardy Defendants' Motion for Summary Judgment (Doc. No. 48) is **GRANTED**, Defendants' Carl Wiseman and ECI, Inc.'s Motion for Summary Judgment (Doc. No. 50) is **GRANTED**, and Defendants' ECI and Wiseman's Motion to Amend Case Management Order (Doc. No. 39) is **PROVISIONALLY DENIED**.

**IT IS SO ORDERED.**

Date: 02/06/08      **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri      Fernando J. Gaitan, Jr.
     Chief United States District Judge